UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-25083-BLOOM/Elfenbein

SEBASTIAN JULIEN ALFRED GRAUX,

    Plaintiff,

v.

UNIVERSAL MUSIC GROUP, INC.,
ICON MUSIC S A S, SALOMON VILLADA
HOYOS, ALEJANDRO RAMIREZ SUAREZ,
JOHAN ESTEBAN ESPINOSA CUERVO,
UMG RECORDINGS, INC.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS AND TO STRIKE

**THIS CAUSE** is before the Court upon Defendant Alejandro Ramírez Suárez's ("Suárez") Motion to Dismiss First Amended Complaint, ECF No. [50]. Plaintiff Sebastian Julien Alfred Graux ("Graux") filed a Response in Opposition, ECF No. [69]. Additionally, Suarez filed a Motion to Strike Prayer for Statutory Damages and Attorneys' Fees, ECF No. [51], to which Graux filed a Response in Opposition, ECF No. [70]. The Court has carefully reviewed the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motions are denied.[1]

**I. BACKGROUND**

The Amended Complaint asserts two causes of action against Defendants Universal Music Group, Inc. ("Universal"), UMG Recordings, Inc. ("UMG"), Icon Music S A S ("Icon"), Salomón

---

[1] This matter is before the Court upon the Order of Transfer from the United States District Court for the Central District of California. *See* ECF No. [89]. In the Notice of Pending Motions, the parties identified the portions of Suárez's Motions that remain pending upon transfer. ECF No. [106]. This Order addresses only the issues raised in the Notice.

Villada Hoyos ("Feid"), Suárez, and Johan Esteban Espinosa Cuervo ("Jowan") (collectively "Defendants") for not crediting Graux on the songs *Ferxxo 100* and *X20X*. ECF No. [42] at 15-16, 17-18.[2]

Graux is a recording artist known for writing and producing guitar loops for use in musical releases for other artists. *Id.* at ¶ 34. In 2021, Graux met the team at Icon, a Colombian music producing company, and Jowan, an Icon producer. *Id.* at ¶ 37-38. Shortly thereafter, Graux sent different audio files containing his copyrighted musical works. *Id.* at ¶ 39. Months later, Graux went on a second business trip to Icon's studio in Medellin, Colombia. *Id.* at ¶ 40. While at the studio, Graux learned directly from Jowan that three of Graux's guitar loops – *Sad Crab*, *Angel*, and *San Juan* – were going to be used in three of Feid's upcoming song releases. *Id.*

After meeting with Icon in Colombia, Graux contacted Suárez via Instagram. Suárez replied to "send me a pack [] [o]f guitar loops," and Graux provided Suárez a Dropbox link to his guitar loops. *Id.* at ¶ 41. During this same exchange, Suárez and Graux discussed collaborating and Graux receiving a co-producer credit on the works they created. *Id.* at ¶ 42. During a trip to Miami, Graux learned that Feid would be having a concert. *Id.* at ¶ 46. Graux asked Suárez for help to "make sure I can go see Ferxxo show backstage tomorrow," as Graux heard "there were three songs on the album that included Graux's guitar loops. *Id.* On February 28, 2022, Graux sent Suárez a voice note letting Suárez know that he met with Feid backstage. *Id.*

On May 20, 2022, Jowan messaged Graux that *Ferxxo 100* was going to be released in three weeks. *Id.* at ¶ 49. Five days later, Jowan requested information from Graux regarding registration of the song. *Id.* Shortly after *Ferxxo 100* was released through Universal and UMG,

---

[2] Count II of the Amended Complaint alleges copyright infringement against Defendants Universal, UMG, Feid, Jowan, and Icon, for incorporating Graux's copyrighted work *Angel* into the song *De Tanto Chimbiar*. ECF No. [42] at 16-17. However, because Count II does not seek relief from Suárez, the Court focuses only on Counts I and III.

2

Jowan informed Graux that he had mistakenly been left out of the song's credits. *Id.* at ¶ 50. Jowan stated that he would work to correct the credit error. *Id.* On June 14, 2022, Jowan messaged Graux an apology that Spotify was taking longer than expected to organize the credits for *Ferxxo 100*. On August 1, 2022, Graux messaged Suárez asking for help with the credit on *Ferxxo 100*, to which Suárez replied: "[m]y brother how are you. That [you] will have to do with your lawyer my brother. I didn't put you in the song so I don't know how things were done. I'm just part of it." *Id.* at ¶ 58.

Later that month, Graux received a proposal from Suárez's company, Black Koi Entertainment LLC, regarding a publishing deal. *Id.* at ¶ 59. Graux rejected the proposal. *Id.* at ¶ 61. On September 14, 2022, *X20X* was released through Universal and UMG. *Id.* at ¶ 68. Graux contends that the song directly incorporated his copyrighted work, but Graux did not receive proper crediting, or any compensation associated with this song. *Id.* On October 31, 2022, a representative for Feid sent over another split proposal for the songs, which Graux rejected. *Id.* at ¶¶ 69-70. Almost a year later, attempts at resolving the open issues on credits, splits, and royalties were still unsuccessful, and, to date, no resolution has been reached. *Id.* at ¶ 71.

In the Motion to Dismiss, Suárez contends that the Amended Complaint is a shotgun pleading because the Amended Complaint does not specify who each claim is against. ECF No. [50]. Further, Graux fails to state a claim as to Suárez because the Amended Complaint does not allege copying by Suárez, which is an essential element of Graux's claims. ECF No. [50]. Graux responds that the Amended Complaint is not a shotgun pleading because it sufficiently places Defendants on notice as to what claims Graux asserts against each Defendant. Further, because Suárez was credited as a writer and producer, Suárez is a direct infringer, and it is not necessary

3

for Graux to have alleged that Suárez had actual knowledge of the copyright infringement. ECF No. [69].

In the Motion to Strike, Suárez argues that Graux did not copyright his guitar loops until after the alleged infringement, and thus, Graux cannot recover statutory damages for any activity that took place prior to registration. ECF No. [51]. Graux responds that this Motion is premature and asks that the Court allow the parties to conduct discovery so that Graux can assess the damages available.

## II. LEGAL STANDARD

### A. Shotgun Pleading

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four common types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," (2) a complaint guilty of "being replete with conclusory, vague, and immaterial facts," (3) a complaint that commits the sin of "not separating into a different count each cause of action or claim for relief," and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321-23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "The key inquiry is whether the 'failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count.'"

*Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) (quoting *Weiland*, 792 F.3d at 1324).

### B. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "A facially plausible claim must allege facts that are more than merely possible. . . . But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

Further, "[o]n a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("We are required to accept the facts as set forth in the plaintiff's complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits.").

### C. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District Courts have "broad discretion in considering a motion to strike under Fed.

R. Civ. P. 12(f)." *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317-18 (S.D. Fla. 2005). Despite this discretion, "'[a] motion to strike is a drastic remedy[,]' which is disfavored by the courts and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) and *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978)). "[A] prayer for relief not available under the applicable law is properly subject to a motion to strike." *Hodge v. Orlando Utils. Comm'n*, No. 09-cv-1059, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009).

## III. DISCUSSION

### A. Motion to Dismiss

#### i. Shotgun Pleading

Suárez seeks to dismiss the Amended Complaint as a shotgun pleading because Graux fails to allege what role each Defendant played in the copyright infringement and impermissibly lumps together allegations against all Defendants. ECF No. [50] at 19-20. Graux responds that the Amended Complaint specifies the actionable conduct of each Defendant. ECF No. [69] at 16-17.

The fourth type of shotgun pleading is one that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). However, "notice is the touchstone of the Eleventh Circuit's shotgun pleading framework." *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) (quoting *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1139 (M.D. Fla. 2018)). "The key inquiry is whether the 'failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations

6

underlying each count.'" *Id.* (quoting *Weiland*, 792 F.3d at 1324). Thus, a complaint will be dismissed as a shotgun pleading where it is replete with allegations that the defendants' engaged in certain conduct but makes no distinction between the defendants charged, and it is improbable that *all* defendants are responsible for the alleged conduct. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). On the contrary, "[t]he fact that defendants are accused collectively does not render the complaint deficient" because such a "complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

The Court finds that the Amended Complaint is not a shotgun pleading. Although Counts I and III are asserted against all Defendants, each Defendant, including Suárez, is alleged to have contributed to the writing and production of the songs at issue: *Ferxxo100* and *X20X*. *See* ECF No. [42] at 15-16, 17-18. Further, Graux specifies the wrongdoing that is attributed to Suárez. In Count I, Graux asserts that *Ferxxo 100* credits Suárez as a writer and producer of the song. *Id.* at ¶ 81. Likewise, in Count III, Graux asserts that *X20X* credits Suárez as a writer and producer of the song. *Id.* at ¶ 97. The Amended Complaint gives Suárez adequate notice of the claims brought against him, and the Court therefore rejects Suárez's argument on this point.

    ii. **Failure to State a Claim**

Suárez contends that Graux fails to allege copying as to Suárez, as the Amended Complaint alleges that Graux gave the guitar loops to Jowan in a collaboration session during which Suárez was not present and does not allege how Suárez personally performed any "acts of infringement." ECF No. [50] at 21. Further, Suárez asserts that his credit as a writer and producer on the songs is insufficient to establish infringement. *Id.* Graux responds that he asserts claims for direct infringement, and it is therefore not necessary to have alleged that Suárez had actual knowledge that the guitar loops used were done without permission from Graux. ECF No. [69] at 18. Thus,

7

Graux contends that the allegations in the Amended Complaint are sufficient to state a claim against Suárez. *Id.*

"[T]he Eleventh Circuit recognizes that there are no strict distinctions between the various theories of liability [under the Copyright Act]. . . . Thus, on [a] Motion to Dismiss, the Court must consider whether the [Amended] Complaint states a valid claim against Defendant [] under any theory of copyright liability[.]" *Software Brokers of Am., Inc. v. Doticom Corp.*, 484 F. Supp. 3d 1205, 1214 n.3 (S.D. Fla. 2020) (quoting *Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*, No. 1:13-cv-2330, 2014 WL 11955391, at *3 (N.D. Ga. Mar. 7, 2014)) (alterations in original). To determine vicarious copyright infringement, the Eleventh Circuit has established two tests. First, an individual "is vicariously liable for copyright infringement if he 'had the ability to supervise the infringing activity' and 'had a financial interest in that activity.'" *Software Brokers of Am., Inc.*, 484 F. Supp. 3d at 1214 (quoting *Playboy Enters., Inc. v. Starware Pub. Corp.*, 900 F. Supp. 438, 441 (S.D. Fla. 1995)). Second, an individual may be liable for copyright infringement "based on his personal involvement and participation in the infringing activity." *Id.*

Suárez asserts that "the plaintiff must . . . allege that each defendant committed an act of infringement under Section 106 of the Copyright Act." ECF No. [50] at 20. Under that theory, Suárez is correct that "[a] party who merely facilitates the infringing activity cannot be directly liable for copyright infringement." ECF No. [50] at 21 (citing *AK Futures LLC v. LCF Labs Inc.*, 821CV02121JVSADSX, 2022 WL 17887590, at *5 (C.D. Cal. Sept. 28, 2022)). However, as Graux points out in the Response, he asserts claims for direct copyright infringement. To state a claim for direct infringement, the plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (internal quotation and citation omitted). As to the first

element, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, at the outset, the Court notes that Suárez does not directly dispute this fact. Nevertheless, as alleged in the Amended Complaint, Graux is the sole author and owner of the copyright of the guitar loops. ECF No. [42] at ¶ 26, 30.

As to the second element, "[i]f the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are substantially similar." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999) (quotation marks and citation omitted). Here, the Amended Complaint asserts that Graux sent Suárez a Dropbox link to his guitar loops, thus providing Suárez with access to the loops used in the songs at issue. ECF No. [42] at ¶ 41. The Amended Complaint further alleges that Graux informed Suárez that three songs on Feid's album were going to feature Graux's guitar loops, and that Suárez was ultimately credited as a writer and producer on two of those songs. *Id.* at ¶ 46.

The Court finds that although the Amended Complaint does not specifically allege that Suárez participated in the alleged infringement, it does demonstrate that Suárez had access to Graux's guitar loops that were ultimately used in the unauthorized works of which Suárez was a writer and producer. *See Smith v. Casey*, Case No.: 1:12–cv–23795–UU, 2014 WL 11878422, at *7 (S.D. Fla. Oct. 29, 2014) ("Importantly, Plaintiff has sufficiently alleged that Defendants had access to the *Spank* Composition and that the *Spank* Composition was used in unauthorized works. . . . Without being 'privy to Defendants' actions,' Plaintiff is 'unable to pinpoint the specific acts'" that transpired." (citing *Herzog*, 193 F.3d at 1248)); *see also Ordonez–Dawes v. Turnkey Properties, Inc.*, No. 06–60557, 2007 WL 1614515, at *3 (S.D. Fla. Apr. 5, 2007) ("Accepting

9

Plaintiff's allegations as true, as the Court is required to do at this stage of the proceedings, it is improbable Plaintiff would be able to describe with any further particularity how and when the Defendants [copied Plaintiff's work]. Unless Plaintiff were privy to Defendants' actions, Plaintiff would be unable to pinpoint the specific acts which transpired between Defendants[.]"). The same is true here. Allegations that Graux gave Suárez access to his guitar loops and the guitar loops were later used in unauthorized songs are sufficient to survive the Motion to Dismiss. Accordingly, drawing all inferences in favor of Graux, the Amended Complaint asserts both elements for a direct infringement claim against Suárez.

### B. Motion to Strike

Suárez also seeks to strike Graux's prayer for statutory damages and attorney's fees, arguing that Graux's request for damages is barred by 17 U.S.C. § 412. ECF No. [51]. Graux responds that the Motion is procedurally invalid and premature, and the Court should let Plaintiff develop discovery on the issue prior to judicial determination as to the availability of such remedies. ECF No. [70]

"The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Further, as highlighted by Suárez, 17 U.S.C. § 412 states that no award of statutory damages or attorney's fees shall be made for:

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

As such, 17 U.S.C. § 412 presents "a question about the *timing* of Plaintiff's registration of the copyright materials, whether the Work was published or unpublished, and the timing of any publication." *Scott v. Free Money Publ'ns, LLC*, Case No. 23-81492-CV-MIDDLEBROOKS,

2024 WL 3757311, at *4 (S.D. Fla. June 11, 2024). Given those issues yet to be determined, the Court finds that Plaintiff's prayer for statutory damages or attorney's fees is a question of fact that is not appropriate for resolution at this stage. *See id.* (denying motion to strike prayer for damages under 17 U.S.C. § 412, because on a motion to dismiss, the issue was premature).

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Suárez's Motion to Dismiss, **ECF No. [50]** is **DENIED**.

2. Defendant shall file its Answer to the Amended Complaint **by June 20, 2025**.

3. Defendant's Motion to Strike Prayer for Statutory Damages, **ECF No. [51]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 6, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record